In re Thomas B. **WOODALL**, Jr., Debtor.

**WILCOXON CONSTRUCTION, INC., Plaintiff,**

v.

**Thomas B. WOODALL, Jr., Defendant.**

**Bankruptcy No. 92–1–1488–ESD. Adv. No. 92–1A–372–ESD.**

United States Bankruptcy Court, D. Maryland.

Jan. 13, 1995.

John P. Van Beek, Alexandria, VA.

James P. Koch, Trustee, Baltimore, MD.

Michael L. Kaiser, College Park, MD.

## MEMORANDUM OPINION

DUNCAN W. KEIR, Bankruptcy Judge.

Thomas Woodall, Jr. (hereinafter "Debtor") filed a petition under Chapter 7 of the United States Bankruptcy Code on March 12, 1992. On October 9, 1992, Wilcoxon Construction, Inc. (hereinafter "Wilcoxon") filed a Complaint to Determine Dischargeability of Debt pursuant to 11 U.S.C. § 523(a)(2) and (a)(6). On March 8, 1993, Wilcoxon filed a Motion for Leave to Amend the Complaint to add a count pursuant to 11 U.S.C. § 523(a)(4). After disposition of various pretrial motions, the only remaining count of the complaint seeks non-dischargeability of Wilcoxon's debt pursuant to 11 U.S.C. § 523(a)(2).

■ The parties have filed Cross Motions for Summary Judgment. Summary judgment is appropriate upon a showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. F.R.B.P. 7056(c); *Miller v. Federal Deposit Ins. Corp.*, 906 F.2d 972, 973 (4th Cir.1990); *In re Schroeder*, 173 B.R. 93, 94 (Bankr.D.Md. 1994). The parties agree to the relevant facts from which this court shall render its decision. Accordingly, summary judgment is appropriate.

## UNDISPUTED FACTS

On or about December 4, 1989, Wilcoxon and Woodall Corporation entered into a subcontractor agreement whereby Wilcoxon agreed to complete the insulation and finish system for Woodall Corporation at an elementary school site. The Gassman Corporation was the general contractor. The Debtor herein was president of Woodall Corporation. The contract price was $51,000.00, payable through monthly requisitions. By June 1990, Wilcoxon had completed its contract but had not received the full contract price. Woodall Corporation owed Wilcoxon an outstanding balance of $21,422.00 for services rendered.

Debtor repeatedly told Wilcoxon that Woodall Corporation had not been paid by the Gassman Corporation for Wilcoxon's work and that Wilcoxon would be paid as soon as such monies were received by Woodall Corporation. Actually, Gassman Corporation had paid Woodall Corporation all amounts due for services rendered. Woodall Corporation had used the monies to pay third parties. In reliance, Wilcoxon took no action against Woodall Corporation.

In January 1992, Wilcoxon initiated an action against the Debtor in the Circuit Court for Prince George's County for "Breach of Contract and for Fraud under Real Property § 9–201 *et seq.* of the Annotated Code of Maryland." Wilcoxon filed an Amended Motion for Summary Judgment requesting judgment on the fraud count of the complaint pursuant to the Maryland Construction Trust Statute. In its motion, Wilcoxon cited to Maryland Code Annotated Real Property § 9–201 *et seq.* and asserted that because "the monies paid to Woodall Corporation have not been paid over to Wilcoxon Construction, Inc. Thomas Woodall, Jr.'s liability to the plaintiff under Real Property § 9–201 *et seq.* is patent." Mr. Woodall, Debtor herein, did not oppose the motion and on January 31, 1992, an Order granting plaintiff's motion for summary judgment was entered in the amount of $21,422.00 (hereinafter referred to as the "Judgment").

## ARGUMENT

■ A discharge under Section 727 does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit,

to the extent obtained, by false pretenses, a false representation, or actual fraud. 11 U.S.C. § 523(a)(2)(A). To satisfy its burden, the Plaintiff must prove the following elements:

(1) the debtor made the representations;

(2) that at the time the debtor knew the representations were false;

(3) that debtor made the representations with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations, and

(5) that the creditor sustained loss and damage as the proximate result of the .representations having been made.

*In re Shipe,* 41 B.R. 584, 586–87 (Bankr. D.Md.1984); *see also In re Kirsh,* 973 F.2d 1454, 1457 (9th Cir.1992); *In re Raper,* 162 B.R. 127 (Bankr.E.D.Va.1993). The standard of proof in a dischargeability action, including fraud, is a preponderance of evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ Preliminarily, Plaintiff argues that the Judgment is *res judicata* and thus, the Debtor is precluded from relitigating those issues necessary and already decided. The doctrines of collateral estoppel and *res judicata* are applicable to dischargeability claims where there is a final judgment from a state court proceeding in which relevant facts and issues have been actually litigated by the state court and were necessary to the state court decision. *In re Piercy,* 140 B.R. 108, 113 (Bankr.D.Md.1992) (citing *In re Raynor,* 922 F.2d 1146 (4th Cir.1991); *Combs v. Richardson,* 838 F.2d 112 (4th Cir.1988); *In re Halpern,* 810 F.2d 1061 (11th Cir.1987); *In re Shuler,* 722 F.2d 1253 (5th Cir.1984); *In re McCown,* 129 B.R. 432 (Bankr.D.Md.1991); *In re Myers,* 52 B.R. 901 (Bankr.E.D.Va. 1985); *In re Pitner,* 6 B.R. 731 (Bankr. E.D.Tenn.1981); see also Restatement (Second) Judgments § 27 (1982)). In addition, "[t]he doctrine of collateral estoppel can be invoked as to undisputed material facts necessary to a summary judgment." *Id.; In re Parks,* 141 B.R. 92, 93 (Bankr.D.Md.1991).

Plaintiff was awarded summary judgment against the Debtor upon a finding of liability pursuant to the Maryland Construction Trust Statute, Md.Code Ann.Real Prop. § 9–201 *et seq.* (1988 & Supp.1993). These statutory provisions provide as follows:

§ 9–201: Moneys to be held in trust; commingling.

(a) Moneys to be held in trust.—Any moneys paid under a contract by an owner to a contractor, or by the owner or contractor to a subcontractor for work done or materials furnished, or both, for or about a building by any subcontractor, shall be held in trust by the contractor or subcontractor, as trustee, for those subcontractors who did work or furnished materials, or both, for or about the building, for purposes of paying those subcontractors.

§ 9–202: Liability for fraudulent retention or use of moneys held in trust under § 9–201 of this subtitle.

Any officer, director, or employee of any contractor or subcontractor, who, with intent to defraud, retains or uses the moneys held in trust under § 9–201 of this subtitle, or any part thereof, for any purpose other than to pay those subcontractors for whom the moneys are held in trust, shall be personally liable to any person damaged by the action.

§ 9–203. Misuse of funds prima facie evidence of intent to defraud.

The use by a contractor or subcontractor or any officer, director, or employee of a contractor or subcontractor of any monies held in trust under § 9–201 of this subtitle, for any other purpose than to pay those subcontractors who did work or furnished materials, or both, for or about the building, shall be prima facie evidence of intent to defraud in a civil action.

The Subtitle outlined above entitled "Trust Relationships in the Construction Industry" became effective on July 1, 1987. In 1993, *after* the Judgment was obtained by Plaintiff, the Court of Appeals of Maryland, in a case of first impression, rendered a decision that clarified the statute and its application. Prior to that decision, only the federal bankruptcy courts had interpreted the statute. This court will briefly outline the state of the law at the time the Plaintiff obtained its

Judgment in an attempt to determine what was actually decided by the state court.

The bankruptcy courts interpreted the statute as it related to dischargeability complaints brought pursuant to 11 U.S.C. § 523(a)(4). Section 523(a)(4) excepts from discharge any debt for fraud or defalcation while acting in a fiduciary capacity. In several proceedings, plaintiffs argued that liability under the Maryland Construction Trust Statute conclusively established the non-dischargeability of their debts.

"In order for a debt to be non-dischargeable under Section 523(a)(4) arising from a breach of fiduciary duty, the debtor must have been acting as a trustee of an express or technical trust." *In re Holmes,* 117 B.R. 848, 852 (Bankr.D.Md.1990) (Schneider, J.); *In re Piercy,* 140 B.R. at 114. The court has been divided as to whether the Maryland Construction Trust Statute creates an express or technical trust, rendering section 523(a)(4) applicable. In *In re Marino,* 115 B.R. 863 (Bankr.D.Md.1990) (Derby, J.), the court held that under the statute, "... an express trust is also created. (citation omitted). Pursuant to § 9–201(a) contractors and subcontractors who receive money from owners are trustees for such money which is held in trust." *Id.* at 869. To the contrary, in *In re Holmes,* 117 B.R. 848 (Bankr.D.Md.1990), the court held that the statute "does not create an express trust sufficient to deny dischargeability of a debt incurred by the debtor's breach of fiduciary duty ..." *Id.* at 855. The court, however, is agreed that any fiduciary relationship imposed by Md.Code Ann.Real Prop. § 9–201(a) is limited to the contractor or subcontractor, and does not extend to an individual who is not a party to the contract.[1]

The court also defined the standard of fraud necessary for imposition of liability under the Maryland Construction Trust Statute. "Fraud under [the statute] can be viewed as implied fraud or fraud in law." *In re Piercy,* 140 B.R. at 114. Pursuant to Md.Code Ann.Real Prop. § 9–203, use of monies for purposes other than paying subcontractors who did work is prima facie evidence of intent to defraud. No evidence of bad faith is necessary. That finding, however, was found to be insufficient to support a finding of fraud for purposes of 11 U.S.C. § 523(a). *Id.* In *In re Marino,* 139 B.R. 380 (Bankr.D.Md.1992), the court held that "[f]raud under § 523(a)(4) must be actual and fraud in fact involving moral turpitude or intentional wrongdoing." *Id.* at 385. "Section 9–203 of the Maryland Trust Relationships subtitle is fraud in law. It presumes an intent to defraud without requiring facts be demonstrated to prove that positive, immoral acts were in fact conducted." *Id.* at 383.

As interpreted by the written opinions of the court, at the time of the entry of the Judgment, Md.Code Ann.Real Prop. § 9–203 imposed personal liability under Md.Code Ann.Real Prop. § 9–202 predicated on prima facie evidence of intent to defraud by the mere showing that the monies were used for a purpose other than to pay the subcontractors. As evidenced by the pleadings filed in state court, the Plaintiff did not have to prove, and indeed, did not even plead, actual fraud. At the time that the Plaintiff brought the action, it had the burden of proving only that the monies earmarked for Plaintiff were used for another purpose. Because the issue of actual fraud was neither necessary to nor actually decided by the state court at the time the Judgment was obtained, the doctrine of *res judicata* is inapplicable. As a result, the burden remains upon the Plaintiff to prove all necessary elements of its § 523(a)(2)(A) action.

In an attempt to circumvent this effect, Plaintiff argues that because of the Court of Appeals' subsequent decision in *Ferguson Trenching Co., Inc. v. Kiehne,* 329 Md. 169, 618 A.2d 735 (1993), liability under Md.Code Ann.Real Prop. § 9–203 had to be predicated upon a finding of actual fraud, and, therefore, the issue of actual fraud was decided.

---

1. In dismissing the count brought pursuant to 11 U.S.C. 523(a)(4), this court held that Md.Code Ann.Real Prop. § 9–201 did not create a trust and fiduciary duty upon the individual as re-quired for the applicability of section 523(a)(4) (citing *In re Holmes,* 117 B.R. 848 (Bankr.D.Md. 1990); *In re Marino,* 139 B.R. 380 (Bankr.D.Md. 1992)).

In *Ferguson*, the court interpreted the statute as applied to the following facts. A contract was entered into between Ferguson Trenching, the sub-subcontractor, and Advanced Excavation, a subcontractor of Triple Brook Partnership. *Id.* 618 A.2d at 736. Kiehne was the president of Advanced. *Id.* Pursuant to the contract, Ferguson completed its work and billed Advanced for the contract price. *Id.* Advanced received 251,-000.00 from Triple Brook towards its 279,-000.00 contract. Advanced used the remaining balance for other construction projects and operating expenses. *Id.* Ferguson was never paid, obtained a judgment against Advanced for the amount due under the contract and then filed a complaint alleging that Kiehne had violated the Construction Trust statute. *Id.* At trial, a judgment was entered in favor of the defendant. The trial court found that "Ferguson had failed to make a showing by a preponderance of the evidence of a clear intent to defraud". *Id.* 618 A.2d at 737.

■ The first issue addressed by the Court of Appeals was whether Md.Code Ann. Real Prop. § 9–201 imposed a fiduciary duty on Kiehne. *Id.* Citing with favor the decisions of the bankruptcy courts, the Court of Appeals held that Md.Code Ann.Real Prop. § 9–201 "creates a trust relationship between the contractor or subcontractor that has received payment from an owner and the subcontractor for whose performance the owner has paid. Nothing in the statute makes a corporate officer, director, or employee a fiduciary with respect to a party that has entered into a contract with the corporation." *Id.* 618 A.2d at 739.[2]

The second issue was whether proof of diversion of funds for a purpose other than paying the subcontractor constitutes conclusive proof of an intent to defraud. Ferguson argued that "prima facie evidence" constituted conclusive proof of an intent to defraud. The Court of Appeals bifurcated the issue, defining both "prima facie evidence" and "intent to defraud". *Id.* 618 A.2d at 740. The Plaintiff relies solely on the court's resolution of the second bifurcated issue for its *res judicata* argument.

■ The Court of Appeals rejected Ferguson's argument that proof of diversion of trust funds equals proof of intent to defraud. Such reading of "prima facie evidence" would create an irrebuttable, or conclusive presumption, for which no authority exists. *Id.* 618 A.2d at 741. The court, at length, set forth two potential meanings for the phrase "prima facie evidence", but having already rejected Ferguson's analysis, found that it need not decide which definition was applicable. The court added, however, that "[w]hile it does not create an irrebuttable presumption of intent to defraud, § 9–203 nonetheless provides the plaintiff subcontractor an important evidentiary boost towards establishing the defendant's intent to defraud." *Id.* 618 A.2d at 742. Thus, a defendant may introduce evidence to convince the trier of fact that the defendant did not have the requisite

**2.** This holding, however, does not necessarily render 11 U.S.C. § 523(a)(4) inapplicable in every situation wherein a corporate officer diverts monies from a corporate trust in violation of the Maryland Construction Trust Statute. Under general principles of corporate law, corporate officers are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body. *See generally, In re Pontier*, 165 B.R. 797 (Bankr.D.Md.1994) (citing *Tedrow v. Deskin*, 265 Md. 546, 290 A.2d 799 (1972) (citations omitted)).

Further, "an officer who causes a corporate trustee to commit a breach of trust causing loss to the trust administered by the corporation is personally liable to the beneficiaries for the loss." *In re Baird*, 114 B.R. 198, 204 (9th Cir. BAP 1990) (citing *Eg. Seven G Ranching Co. v. Stewart Title & Trust*, 128 Ariz. 590, 593, 627

P.2d 1088, 1091 (App.1981)). "A corporation acts only through its officers or employees. When a corporation as an entity is placed in a fiduciary capacity it is the corporate officer who is charged with living up to the terms of the agency. If the fiduciary relationship is not imposed upon the corporate officer charged with maintaining the fiduciary relationship, then § 523(a)(4) could be rendered meaningless in cases where the fiduciary relationship is established between a creditor and a corporate fiduciary only. All the debtor would have to do to avoid § 523(a)(4) is place the corporation in the position of the fiduciary rather than himself." *Id.* 114 B.R. at 205 (quoting *In re Koszuth*, 43 B.R. 104, 107 (Bankr.M.D.Fla.1984)). A complaint averring all facts necessary to impose this fiduciary liability may support a finding of non-dischargeability pursuant to § 523(a)(4).

intent to defraud. *Id.* *See generally,* David F. Albright, Jr., *A Review of the Maryland Construction Trust Statute Decisions in the Court of Appeals of Maryland and the United States Bankruptcy Court for the District of Maryland,* 22 U.Balt.L.Rev. 25 (1992).

Plaintiff argues that in light of the Court of Appeals' opinion in *Ferguson,* handed down after the Judgment, in which opinion the Court of Appeals made a finding of actual intent to defraud a necessary element to invoke liability against the officer pursuant to Md.Code Ann.Real Prop. § 9–202, the state court, in rendering the Judgment, *sub silentio* must have found that the Debtor actually committed fraud. While it is true that subsequent to the *Ferguson* decision a plaintiff must prove an actual intent to defraud by clear and convincing evidence, *Ferguson, supra* 618 A.2d at 737 fn. 3, to prevail in an action brought under Md.Code Ann.Real Prop. § 9–202, Plaintiff's argument suffers a serious flaw. The Court of Appeals decision was rendered on January 20, 1993, almost one year after the entry of the Judgment in favor of Wilcoxon. At the time of entry of the Judgment, neither the circuit court nor the parties had the benefit of the *Ferguson* decision. For this reason, it is clear that the issue of actual fraud was not actually litigated in state court and, therefore, is not given preclusive effect.

■ Additionally, even if the Debtor was precluded from relitigating the issue of actual fraud, the Plaintiff still must prove that the Debtor *obtained* money, property or services from the Plaintiff on account of such fraud. A favorable judgment, post-*Ferguson,* would aid a creditor on the element of fraud only; it would not automatically render a particular debt non-dischargeable.

■ The parties agree that the court has before it all relevant facts from which to render its decision. Thus, from the stipulated facts, the court shall determine whether the Plaintiff has met its burden of proving non-dischargeability.

■ Plaintiff argues that Debtor committed actual fraud when the Debtor told the Plaintiff that he had not received money from Gassman and instead, paid the money to third parties. The fraud necessary to sustain a non-dischargeability action is positive fraud or fraud in fact, involving moral turpitude or intentional wrong. *In re Shipe,* 41 B.R. 584, 586 (Bankr.D.Md.1984) (citing *Matter of Reinstein,* 32 B.R. 885, 888 (B.C.E.D.N.Y.1983) *citing Neal v. Clark,* 95 U.S. (5 Otto) 704, 709, 24 L.Ed. 586 (1887)). Actual fraud has been defined as "any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." *In re Marino,* 139 B.R. 380, 383 (Bankr.D.Md.1992) (citing *Collier on Bankruptcy* § 523–09, 532–59–523–61 (15th ed. 1991)). The Debtor misrepresented to Plaintiff that Gassman Corporation had not yet paid Woodall for the services, and that, therefore, Woodall Corporation could not pay the Plaintiff. In fact, Gassman had paid Woodall Corporation.

■ Even if the uncontroverted facts support a finding that the Debtor knowingly made false representations, the Plaintiff has failed to prove that the Debtor obtained money, property or services on account of such false representations. Plaintiff argues that the Debtor obtained money properly belonging to the Plaintiff, in continued reliance upon the Construction Trust Statute. The mere fact that statutory liability arises is not sufficient to invoke § 523(a)(2). Money or services must actually come to the debtor because of the false representation. *In re Burgess,* 955 F.2d 134, 140 (1st Cir.1992); *In re De Maio,* 159 B.R. 383, 385 (Bankr.D.Conn.1993); *In re Shields,* 147 B.R. 627, 629 (Bankr.D.Mass.1992); *In re Chavez,* 140 B.R. 413, 420 (Bankr.W.D.Tex.1992) (citing *In re Rippey,* 21 B.R. 954, 958 (Bankr.N.D.Tex.1982); *In re Fritz,* 88 B.R. 434, 435 (Bankr.S.D.Fla.1988)).

■ To invoke § 523(a)(2), the fraud must have existed at the time of, and been the methodology by which, the money, property or services were obtained. "The fraudulent intent must exist at the inception of the debt." *In re Ethridge,* 80 B.R. 581, 587 (Bankr.M.D.Ga.1987) (citations omitted).

"Subsequent misrepresentations have no effect upon the dischargeability of a debt, since the false representation could not have been the creditor's reason for the extension of credit." *Id.* The Woodall Corporation breached its contract with Plaintiff, but the contract itself and Plaintiff's services thereunder were not obtained by the Debtor's fraud. At the time that the alleged misrepresentations were made, the Plaintiff had already provided services to the Woodall Corporation and only awaited payment. Plaintiff avers no facts which would support a finding that fraud existed at the time the services were rendered.

Rather than deny summary judgment to facilitate further discovery, the court shall rule on the pending motions. Plaintiff's failure to satisfy all necessary elements of § 523(a)(2)(A) demonstrates to this court that no material facts are in dispute. The Supreme Court has held as follows:

"... the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact", since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In its earlier Order on Debtor's Motion to Dismiss Complaint, this court ruled that "because the facts asserted demonstrate that the indebtedness under the contract of the Plaintiff with the Defendant arose before any misrepresentation was allegedly made by the Debtor to the Plaintiff, at first blush, it would seem that there is no demonstrated misrep-

resentation or fraud in the creation of the debt, as required by § 523(a)(2) ... Indebtedness which may be non-dischargeable under § 523(a)(2) by virtue of the alleged fraud, would be the harm or damage occasioned to Plaintiff by the alleged reliance upon the alleged false representation ... Such damage will have to be proven by Plaintiff." Notwithstanding this court's specific direction of the Plaintiff to those elements which required further proof, Plaintiff has failed to put forward facts to establish all necessary elements of this claim. Because Plaintiff has failed to make a showing sufficient to establish that the Debtor obtained money, property or services by fraud, false pretenses or false representations, summary judgment shall be entered in favor of the Debtor. An order shall be entered in conformity with this ruling.